IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

SUSI EMERITA PELKA, as the     *
Surviving Spouse & Personal     *
Representative of the Estate of     *
JEFFERY DAVID PELKA, Deceased,     *
    *
      Plaintiff,     *
    *
    *
              v.     *      CV 516-108
    *
WARE COUNTY, GEORGIA; RANDY ROYAL, *
Individually and in his Official    *
Capacity as Sheriff of Ware     *
County, Georgia; Danny Christmas,   *
Individually and in his Official   *
Capacity as Administrator of the   *
Ware County Jail; CITY OF     *
WAYCROSS, GEORGIA; JEFFREY     *
NICHOLS, BELENDA MCELROY, DWAYNE   *
HOWELL, DONNY SPRADLEY, JAMES    *
SOWELL, JAMES ALDRIDGE, NATHANIEL *
ROBERTS, MICHAL DEAN, JOSHUA    *
RYLEE, GARY SIMMONS, HUBERT    *
RYALS, and JAMES LEE, in     *
their Individual Capacities;    *
PETER WROBEL, M.D., Individually   *
and in his Official Capacity    *
as Medical Director of the Ware   *
County Jail; PETER WROBEL, M.D.,   *
P.C.; SOUTHEAST GEORGIA PRIMARY   *
CARE, P.C.; SOUTHERN CORRECTIONAL *
MEDICINE, LLC; and DONNA BENNET,   *
MICHELLE CHANCEY, JOHNNY LEE    *
JONES, JR., SUSAN MARTIN, SHARON   *
RAY, LYNN STREAT, and KRISTY    *
WHITE, in their Individual     *
Capacities,     *
    *
      Defendants.     *

## O R D E R

This matter is before the Court on the two Motions to Dismiss Plaintiff's Complaint filed by City of Waycross, Georgia ("City"), and Ware County, Georgia ("County"); Ware County Sheriff, Randy Royal, ("Sheriff Royal") and Jail Administrator, Danny Christmas ("Administrator Christmas"); and Jeffrey Nichols, Belenda McElroy, Dwayne Howell, Donny Spradley, James Sowell, James Aldridge, Nathaniel Roberts, Michael Dean, Joshua Rylee, Gary Simmons, Hubert Ryals, and James Lee (collectively, "Jailers"). (Docs. 42, 47.) Plaintiff filed responses in opposition to the motions and Defendants filed replies in support. (Docs. 59, 65, 69, 71, 83, 84, 87.) The Court heard oral arguments on the motions and Plaintiff and Defendants filed supplemental briefs. (Docs. 82, 83, 84, 87.) Accordingly, Defendants' motions have been fully briefed and are ripe for review. For the reasons stated herein, the Defendants' motions are **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

On Friday, December 12, 2014, the Municipal Court of Waycross, Georgia, revoked Jeffrey David Pelka's ("Pelka") probation. (Id. ¶ 40.) That court's incarcerated persons are

2

held at Ware County Jail ("WCJ") according to a contract between County and City. (Id. ¶ 118.) WCJ is operated by Sheriff Royal. (Id. ¶ 6.) During intake at WCJ, Pelka was evaluated by a nurse who noted that Pelka had prescriptions for methadone and oxycodone for pain management; drank alcohol five to seven times a day; complained of delirium tremens, which is a condition caused by alcohol withdrawal; and would be placed in a medical segregation unit. (Id. ¶¶ 38, 45.) Additionally, Pelka's pharmacy faxed his prescription records to WCJ. (Id. ¶ 47.) However, WCJ's policy prohibited inmates from taking their medication without first being examined by a physician who was scheduled to visit on Tuesdays and Thursdays. (Id. ¶¶ 49, 50.) WCJ's policy recognized that withdrawal is a potentially fatal condition. (Id. ¶ 112.)

On December, 13, 2014, Pelka began to exhibit withdrawal symptoms including disorientation, confusion, and hallucinations. (Id. ¶ 53.) Throughout the day, WCJ's medical staff noted Pelka had a temperature of 100.1 degrees, a slight tremor, and was "touching the walls and acting as if he was building something while he was in his cell." (Id. ¶ 56.) Defendant Jones, Jr., called Defendant Dr. Wrobel, to inform him about Pelka's condition and was told to place Pelka on the "MD list for the next visit." (Id. ¶ 57.) When Pelka's family came to visit later that day, they brought Pelka's medications

3

but were told he was too sick for a visit and that the staff would not deliver his medications. (Id. ¶¶ 58-59.)

By Sunday morning, December 14, 2014, Pelka was found shaking his cell door and speaking incoherently. (Id. ¶ 65.) Defendant McElroy, who had come to retrieve Pelka's meal tray, called Defendants Spradley and Nichols for back-up when Pelka failed to hand over his tray. (Id. ¶ 67, 68.) Nichols claims that when he entered the cell, Pelka charged Nichols and Pelka was pepper-sprayed. (Id. ¶ 68.) Plaintiff counters that Pelka never posed any threat; Nichols never entered Pelka's cell; and that Pelka was pepper-sprayed as punishment for failing to return his tray. (Id. ¶ 71.) Defendants then washed off the pepper-spray and Pelka was assessed by a nurse for any signs of physical injury. (Id. ¶¶ 74, 75.) Nichols described Pelka as "shaky," "unstable," and "unsteady on his feet." (Id. ¶ 74.)

That afternoon, Pelka "was playing with the walls in the segregation cell"; would sporadically lie down and get up to wander around; complained of hallucinations; and eventually stripped naked and began to rub the walls of his cell. (Id. ¶¶ 79, 80.) This led to Pelka being placed in a "rubber room," which was under video surveillance. (Id. ¶ 80.)

During the night and into the morning of December 15, 2014, Pelka collapsed at least eight times. (Id. ¶ 85.) Jailers on duty that night observed Pelka's behavior. (Id. ¶¶ 90-96.)

4

When Defendant Sowell checked on Pelka at 6:30 a.m., his legs were blue and a nurse suggested he was suffering from withdrawal. (Id. ¶¶ 97, 98.) At 9:30 a.m., a nurse recommended that Pelka's vitals be checked, but Defendant Simmons ordered Defendant Sowell to wait until after the inmate count. (Id. ¶¶ 101-03.) When Simmons and Sowell went to retrieve Pelka approximately forty minutes later, he was shaking, vomiting, had mucus coming from his nose, and his legs had turned purple. (Id. ¶¶ 106, 108.) While being transferred to medical, Pelka became limp and lifeless and was taken to the emergency room but pronounced dead at 11:20 a.m. (Id. ¶¶ 108, 110-11.)

On December 11, 2016, Plaintiff filed this suit. (Doc. 1.) Defendants filed separate motions to dismiss on January 3, 2017, and January 17, 2017. The Court heard oral arguments on the motions on August 4, 2017. (Doc. 81).

## II. LEGAL STANDARD

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to contain "a short plain statement of the claim showing that the pleader is entitled to relief," which gives a defendant notice of the claim and its grounds. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). To survive a Rule 12(b)(6) motion to dismiss, a complaint must include enough facts that demonstrate the plaintiff's right to relief is more

than speculative, and those facts must state a plausible claim to relief. Id. at 570. While a complaint does not need to be bursting with factual allegations, there must be something more than a bare bone recital of the elements of a cause of action. Id. at 555.

However, a complaint should not be denied "unless it appears beyond a doubt that the plaintiff can prove no set of circumstances that would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The Court must accept all factual allegations as true and construe them in the light most favorable to the plaintiff. Belanger v. Salvation Army, 556 F.3d 1153, 1155 (11th Cir. 2009).

### III. DISCUSSION

Plaintiff alleges in her complaint that Defendants are liable under state and federal law. Plaintiff also seeks punitive damages and attorneys' fees.

**A. LIABILITY OF CITY AND COUNTY**

Plaintiff's substantive state-law claim against City and County under O.C.G.A. § 42-5-2 fails due to sovereign immunity. Under Georgia law, cities and counties are protected by sovereign immunity. Godfrey v. Ga. Interlocal Risk Mgmt. Agency, 719 S.E.2d 412, 414 (Ga. 2011) (cities); Gilbert v. Richardson, 452 S.E.2d 476, 478-79 (Ga. 1994) (counties).

Sovereign immunity may only be overcome by express waiver. Godfrey, 719 S.E.2d at 414; Gilbert, 452 S.E.2d at 478. Plaintiff asserts that O.C.G.A. § 42-5-2 includes such a waiver with respect to providing medical services to inmates. While that statute imposes a duty to provide medical care to inmates, it does not waive sovereign immunity. Gish v. Thomas, 691 S.E.2d 900, 907-08 (Ga. Ct. App. 2010); Howard v. City of Columbus, 521 S.E.2d 51, 65 (Ga. Ct. App. 1999). Because sovereign immunity has not been waived, Plaintiff's state-law claim against City and County for breach of a duty to provide medical care fails.

City and County also claim they cannot be held liable under § 1983 for Sheriff Royal's deliberate indifference because they had no control over Sheriff Royal's policies. Both cities and counties are "persons" for the purposes of § 1983 and can be held liable for constitutional deprivations. Monell v. Dept. of Soc. Sec. Servs., 436 U.S. 658, 690 (1978). To hold a local government liable, a plaintiff must show "that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 404 (1997) (emphasis in original). A local government can be liable in two ways: (1) an official policy promulgated by the entity; or (2) an unofficial policy

shown by the repeated actions of the entity's final policymaker. Grech v. Clayton Cnty., Ga., 335 F.3d 1326, 1329-30 (11th Cir. 2003). Importantly, an entity cannot circumvent constitutional protections and allow others to do what it could not. See Pembaur v. City of Cincinnati, 475 U.S. 469, 480-81 (1986) (holding a municipality may be liable for the decisions of an official if it has delegated final authority).

According to Plaintiff, City only lacked control because it delegated authority over housing and providing medical care to inmates through an inter-governmental agreement with County. However, City's duty to provide medical care cannot be delegated. Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 705-06 (11th Cir. 1985). While City is a separate entity from – and therefore has no direct control over the policies of – Sheriff Royal, City became responsible for Sheriff Royal's policies when it entrusted him with its inmates. Id. at n.11;[1] see also Trezevant v. City of Tampa, 741 F.2d 336, 339-40 (11th Cir. 1984) (holding a city partly liable for constitutional violations that occurred after the county took custody).

Next, City argues that it did not know its policy of entrusting inmates to Sheriff Royal would lead to a

[1] Although Ancata dealt with delegating to a private entity, the decision's language suggests that the analysis would be the same. Ancata, 769 F.2d at 706 ("[I]f the county permitted the sheriff and/or prison health officials that it contracted with to establish such a policy or custom, it may also be liable.").

8

constitutional violation. However, "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." Pembaur, 475 U.S. at 480. This happens when the policy itself is facially unconstitutional. Marsh v. Butler Cnty., 268 F.3d 1014, 1036 (11th Cir. 2001). Since Plaintiff alleges Sheriff Royal's policy is facially unconstitutional, City may be held liable despite its lack of notice.

Plaintiff also alleges facts showing Sheriff Royal was a City policymaker. In the Eleventh Circuit, whether an officer's decisions are subject to review is dispositive in determining if he is a final policymaker. See Scala v. City of Winter Park, 116 F.3d 1396, 1401 (11th Cir. 1997). Plaintiff alleges City delegated all responsibility over its prisoners to County through an inter-governmental agreement. When a city delegates final authority to an entity, it remains liable for that entity's actions. See Hearn v. City of Gainesville, 688 F.2d 1328, 1334-35 (11th Cir. 1982), overruled on other grounds by McKinney v. Pete, 20 F.3d 1550 (11th Cir. 1994); Ancata, 769 F.2d at 705. The allegations demonstrate that City gave Sheriff Royal complete authority over its inmates and is therefore liable for Sheriff Royal's decisions.

Next, County claims that it cannot be liable for Sheriff Royal's actions because he was acting on behalf of the state. Whether a county sheriff is an arm of the state cannot be answered categorically "yes or no." McMillian v. Monroe Cnty., 520 U.S. 781, 785 (1997). Instead, it depends on what role a sheriff was serving. Id. Courts look at four factors to determine if an entity is acting as an arm of the state: (1) how state law defines the entity; (2) the control the state has over the entity; (3) the source of the entity's funds; and (4) who is responsible for judgments against the entity. Manders v. Lee, 338 F.3d 1304, 1328. The Eleventh Circuit has found that when a Georgia sheriff acts in a law enforcement capacity, he is an agent of the state. Id. (finding that a county was not liable for sheriff's use-of-force policy at the jail).

However, Plaintiff's allegations stem from Sheriff Royal's failure to provide adequate medical care. Thus, the Court must decide if Sheriff Royal was acting as a county or state actor when served in this capacity. Every district court in Georgia to address this issue, including the Southern District, has found that a Georgia county sheriff is an arm of the county when he provides medical services. See, e.g., Lewis v. Whisenant, 2016 WL 4223721, at 5 (S.D. Ga. Aug. 9, 2016); Robinson v. Integrative Pet. Health Servs., Inc., 2014 WL 1314947, at *12

10

n.148 (M.D. Ga. Mar. 28, 2014); Youngs v. Johnson, 2008 WL 4816731, at *6-8 (M.D. Ga. Oct. 30, 2008); Dukes v. Georgia, 616 F. Supp. 2d 1298, 1319-22 (N.D. Ga. 2006); Green v. Glynn Cty., 2006 WL 156873, at *3 (S.D. Ga. Jan. 19, 2006). In regards to the first three Manders factors, while the state creates - and has control over - a sheriff's duty to maintain jails, O.C.G.A. § 42-5-2(a) specifically entrusts local entities with the medical treatment of inmates. Dukes, 616 F. Supp. 2d at 1319-21. As to the final factor, a judgment against a sheriff relating to inmate medical care would implicate both state and county funds but this is not enough to outweigh the other factors. Id. at 1321-22. Thus, the Court finds that Sheriff Royal is a county actor when he provides medical services to inmates.

Next, County disputes whether Plaintiff's allegations demonstrate deliberate indifference to serious medical needs. To prove deliberate indifference, a plaintiff must show: (1) he had a serious medical need; (2) the defendant acted with deliberate indifference to that need; and (3) the plaintiff's injury was caused by defendant's wrongful conduct. Goebert v. Lee Cnty., 510 F.3d 1312, 1326 (11th Cir. 2007).

### 1. *Pelka's Serious Medical Need*

A serious medical need "is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that

even a lay person would easily recognize the necessity for a doctor's attention." Id. (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994), overruled in part on other grounds by Hope v. Pelzer, 536 U.S. 730, 739 n.9 (2002)). County does not explicitly dispute whether Pelka's condition was sufficiently serious to satisfy this element, and the Court is satisfied as to its seriousness. See, e.g., Lancaster v. Monroe Cnty., 116 F.3d 1419, 1425-26 (11th Cir. 1997) (holding that the seriousness of alcohol withdrawal is clearly established), overruled on other grounds by Caldwell v. Warden, FCI Talladega, 748 F.3d 1090 (11th Cir. 2014).

### 2. Sheriff Royal's Deliberate Indifference

The second element requires a showing that Defendants were deliberately indifferent to Pelka's serious medical condition. A plaintiff must show: (a) Defendants' subjective knowledge of risk of serious harm; (b) disregard of that risk; and (c) by conduct that is more than gross negligence. Goebert, 510 F.3d at 1327.

A plaintiff can show subjective knowledge by demonstrating the defendant was aware of facts that would allow him to infer a risk of serious harm and the defendant made that inference. Farmer v. Brennan, 511 U.S. 825, 837 (1994). This can only be demonstrated by actual knowledge. Burnette v. Taylor, 533 F.3d

1325, 1331 (11th Cir. 2008). Here, Plaintiff alleges that Sheriff Royal's written policy acknowledged that withdrawal was potentially fatal. This demonstrates subjective knowledge.

To satisfy the second sub-element, a plaintiff must show the defendant disregarded the risk by failing to take reasonable measures. Keele v. Glynn Cnty., 938 F.Supp.2d 1270, 1292 (S.D. Ga. 2013). Even if a defendant is generally attentive, one instance of misconduct may suffice. Rogers v. Evans, 792 F.2d 1052, 1062 (11th Cir. 1986). This is also a question of fact, which can be shown by the "standard methods." Goebert, 510 F.3d at 1327. Plaintiff alleges that Sheriff Royal's policy failed to take reasonable measures to abate the danger of Pelka's withdrawal and thereby disregarded that risk.

The final sub-element requires showing a defendant's conduct was more than gross negligence. Goebert, 510 F.3d at 1327; Rogers, 792 F.2d at 1060 (holding that gross negligence is something more than a medical judgment call). A defendant's conduct can go beyond gross negligence when she fails to obtain medical treatment, delays treatment, provides grossly inadequate treatment, takes an easier but less effective course of treatment, or provides treatment so cursory that it amounts to no treatment at all. McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999). County argues that since Pelka did receive medical care, Plaintiff cannot show deliberate indifference.

13

Although courts are hesitant to find deliberate indifference when an inmate received medical care, an entity may still be liable if that care was an easier and less effective method or if the care provided was grossly incompetent or inadequate. Waldrop v. Evans, 871 F.2d 1030, 1036 (11th Cir. 1989). Here, Plaintiff has alleged that the nurses who treated Pelka were unable to provide the treatment he needed and that Dr. Wrobel was only scheduled to come in twice a week. Plaintiff has set out facts that demonstrate care was grossly incompetent, inadequate, or was an easier and less effective method.

### 3. Defendants' Policy Caused Pelka's Constitutional Injury

Finally, a deliberate indifference claim must demonstrate how the established policy resulted in the constitutional violation. Ancata, 769 F.2d at 705-06. Plaintiff alleges that despite inmates not being able to receive their previously-prescribed medication without a physician's authorization, Dr. Wrobel only visited twice a week. Plaintiff argues that, but for this policy, Pelka would have had access to his medication. This is sufficient to establish a causal connection between Sheriff Royal's policy and Pelka's constitutional injury.[2]

The state law claims Plaintiff brings against City and County are barred by sovereign immunity. However, Plaintiff has

---

[2] Because a suit against an agent in her official capacity is essentially a suit against the entity itself, the Court comes to the same conclusion with respect to Plaintiff's claims against Sheriff Royal and Administrator Christmas, in their official capacities. See Kentucky v. Graham, 473 U.S. 159, 165-66 (1985).

alleged facts showing City and County are liable for the deliberate indifference of Sheriff Royal.

## B. SHERIFF ROYAL, IN HIS OFFICIAL CAPACITY

Next, County argues that Plaintiff's state law claims against Sheriff Royal, in his official capacity, are barred by sovereign immunity. Plaintiff responds that sovereign immunity has been waived pursuant to O.C.G.A. §§ 15-16-5, 15-16-23. Those statutes waive sovereign immunity for the official actions of a sheriff when he is sued on his sheriff's bond. See Cantrell v. Thurman, 499 S.E.2d 416, 421 (Ga. Ct. App. 1998), overruled on other grounds by Tantall Cnty. v. Armstrong, 775 S.E.2d 573, 576 (Ga. Ct. App. 2015). A sheriff has a duty to provide medical care to inmates and a breach of that duty could implicate the sheriff's bond. Kendrick v. Anderson, 180 S.E. 647, 648 (Ga. Ct. App. 1938). The extent of Plaintiff's recovery is limited to the applicable bond. Meeks v. Douglas, 146 S.E.2d 127, 745 (Ga. Ct. App. 1965). Plaintiff alleges that Sheriff Royal's policy recognized withdrawal was a potentially fatal condition but Sheriff Royal failed to abate that risk. Therefore, Sheriff Royal can be held liable since he was aware of the illegality of his conduct or failed to exercise ordinary care to prevent it. O.C.G.A. § 15-16-24.[3]

---

[3] Plaintiff also argues that sovereign immunity has been waived under O.C.G.A. § 15-16-24. However, that statute establishes the prerequisites for collecting under a sheriff's bond and does not provide a separate source of liability.

County argues that Sheriff Royal, in his official capacity, is protected by sovereign immunity when he creates a use-of-force policy and cannot be held liable for excessive force. The Eleventh Amendment bars claims against an "arm of the State" brought under § 1983. *Manders*, 338 F.3d at 1328. *Manders* specifically held that when a Georgia sheriff establishes a use of force policy for inmates, he does so as an arm of the state and is protected by Eleventh Amendment immunity. *Manders*, 338 F.3d at 1328 (11th Cir. 2003). Since the pepper-spray incident involves the use of force against an inmate, Sheriff Royal is immune from a § 1983 suit based on excessive force.

## C. INDIVIDUAL LIABILITY OF JAILERS

Plaintiff also seeks to hold the Jailers, in their individual capacity, liable for failing to provide Pelka adequate care and excessive force. County argues that the Jailers are entitled to qualified immunity. County then argues that even if the Jailers are not entitled to qualified immunity, Pelka's treatment did not rise to the level of a constitutional violation.

### 1. *Some Jailers May Have Been Deliberately Indifferent*

Plaintiff must show Jailers acted with deliberate indifference to Pelka's serious medical need and this caused his injury. *Goebert*, 510 F.3d 1312, 1326 (11th Cir. 2007). In her

16

complaint, Plaintiff alleges that each of the Jailers saw Pelka exhibiting withdrawal symptoms and either failed to respond or responded inadequately. Pelka's symptoms included his ramblings, fever, undressing, repeated falls, and discolored limbs. The Court finds the physical symptoms Pelka is alleged to have displayed would be enough to put a layperson on notice of his need to receive treatment. Goebert, 510 F.3d at 1326. Furthermore, each officer's failure to report this could demonstrate a disregard of the risk of Pelka's death that surpasses gross negligence. Keele, 938 F. Supp. 2d at 1292. For example, after being told to bring Pelka to medical, Simmons ordered Sowell to wait until after inmate count, a forty-minute delay. A delay related to non-medical reasons shows deliberate indifference. Bozeman v. Orum, 422 F.3d 1265, 1273 (11th Cir. 2005) (a delay of fourteen minutes was actionable as deliberate indifference). Although Plaintiff concedes that some Jailers brought Pelka to medical personnel, Plaintiff might be able show that Jailers response was grossly inadequate. Waldrop, 871 F.2d at 1036.

### 2. Excessive Force

The Eighth Amendment's proscription against cruel and unusual punishment governs the amount of force prison officials may use against inmates. Campbell v. Sikes, 169 F.3d 1353, 1374 (11th Cir. 1999). Such a claim has an objective and subjective

component.  Sims v. Mashburn, 25 F.3d 980, 983 (11th Cir. 1994).
To satisfy the objective component, an inmate must show the
force was sufficiently serious.  Farmer v. Brennan, 511 U.S.
825, 834 (1994).  The subjective element requires showing force
was used for punitive reasons rather than restoring order.
Whitley v. Albers, 475 U.S. 312, 320-21 (1986).  To determine if
force was used in good faith, courts consider the need for
force, the relationship between that need and the force applied,
the extent of the inmate's injuries, the danger the inmate posed
to other staff and inmates, and efforts taken to temper the
severity of a forceful response.  Id.

Plaintiff alleges that McElroy ordered Pelka to return his
meal tray and called for backup after he failed to do so.
Plaintiff claims Pelka was sprayed while the other guards were
outside his cell and Pelka was lying face-down on the floor.[4]
The Court rejects County's argument that pepper-spray could not
produce injuries that are sufficiently serious to cause a
constitutional violation.  See, e.g., Vinyard v. Wilson, 311
F.3d 1340, 1348 (11th Cir. 2002).  Based on Plaintiff's
allegations, the Court cannot conclude that using pepper-spray
on Pelka was appropriate; Pelka's injuries were de minimis;
Pelka posed a danger to inmates or staff; or that efforts were

---

[4] County points out that this recitation is at odds with what prison staff
reported, but on a motion to dismiss, the Court must construe the facts in
the light most favorable to the plaintiff. Belanger, 556 F.3d at 1155.

taken to temper the severity of Jailers response.  Id.; see also Stallworth v. Tyson, 578 F. App'x 948, 953 (refusing to find use of pepper-spray was not excessive when plaintiff alleged the danger he posed was fabricated).  Therefore, Plaintiff has alleged facts that show force was sufficiently serious and was used in bad faith or was malicious or sadistic.

### 3. *A Finding of Qualified Immunity is not Appropriate at this Point*

Qualified immunity protects government officials performing discretionary functions from liability so long as they do not violate clearly established law.  Morris v. Town of Lexington, 748 F.3d 1316, 1321, 1321 n.15 (11th Cir. 2014).  To survive a motion to dismiss, a plaintiff must: (1) allege sufficient facts to state a violation of his constitutional rights; and (2) demonstrate that those constitutional rights were clearly established at the time of the violation.  Id. at 1322.  Clearly established rights are those set by precedent of the United States Supreme Court, the Eleventh Circuit, and the Georgia Supreme Court.  Snider v. Jefferson State Cmty. Coll., 344 F.3d 1325, 1328 (11th Cir. 2003).  The case does not need to be directly on point and only needs to give the defendant fair notice.  Mitello v. Sherriff of the Broward Sheriff's Office, 684 F. App'x 809, 813 (11th Cir. 2017).

The Complaint demonstrates that Defendants' failure to treat Pelka's alcohol and methadone withdrawal violated a clearly established right. The Eleventh Circuit has found that deliberate indifference to an inmate's serious medical needs violates a clearly established right. See Lancaster, 116 F.3d at 1425. More specifically, there is well-established precedent that withdrawal is a serious medical condition and failing to treat it violates a clearly established right. Id. at 1425-26. At this point, the Court cannot conclude that the Jailers are protected by qualified immunity.

County also moves to dismiss the excessive force claims on the grounds of qualified immunity. The Eleventh Circuit has held, however, that qualified immunity does not apply to excessive force claims because the subjective element is so extreme that no reasonable person could believe her actions were lawful. Danley v. Allen, 540 F.3d 1298, 1310 (11th Cir. 2008), overruled on other grounds by Randall v. Scott, 610 F.3d 701 (11th Cir. 2010). Accordingly, since Plaintiff stated a cause of action based on excessive force, her claim will not be dismissed.

Plaintiff has alleged sufficient facts to state a claim against Jailers, in their individual capacities, under § 1983 for deliberate indifference and excessive force. Since the

Court cannot decide Jailers are protected by qualified immunity, these claims will proceed.

## D. PUNITIVE DAMAGES

Plaintiff cannot recover punitive damages against City and County because municipalities are immune from punitive damages brought under § 1983.[5]  City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981); Alexander v. Fulton Cnty., 207 F.3d 1303, 1322 (11th Cir. 2000), overruled on other grounds by Manders v. Lee, 338 F.3d 1304 (11th Cir. 2003).  Similarly, Plaintiff may not pursue punitive damages against either City or County under state law since Georgia also shields government entities from punitive damages.  Martin v. Hosp. Auth. of Clarke Cnty., 449 S.E.2d 827, 827 (Ga. 1994).[6]

However, Plaintiff also seeks punitive damages for her individual capacity claims.  Although § 1983 does not allow punitive damages against government entities, they may be granted against officers, in their individual capacity.  Young Apartments, Inc. v. Town of Jupiter, 529 F.3d 1027, 1047 (11th Cir. 2008).  These damages are allowed when a defendant's conduct is motivated by evil intent, or was recklessly indifferent to federally protected rights.  Smith v. Wade, 461

---

[5] Plaintiff concedes to this point and says she will no longer pursue these damages. (Docs. 65, 69.)

[6] Plaintiff's punitive damages claim against Sheriff Royal and Administrator Christmas, in their official capacities, must also fail because they represent a government entity.  See  Alexander, 207 F.3d at 1322 n.14; Gilbert, 452 S.E.2d at 478 n.4.

U.S. 30, 56 (1983). Because Plaintiff's claim for punitive damages is against officers, in their individual capacity, and she has alleged that their conduct was motivated by improper intent or was recklessly indifferent to Pelka's federal rights, the Court will allow Plaintiff to continue pursuing punitive damages.

Therefore, Plaintiff fails to allege grounds upon which punitive damages against City and County could be granted. However, she has stated a claim for punitive damages against the individual Defendants under § 1983.

## IV. CONCLUSION

At this stage, taking Plaintiff's allegations as true, the Court concludes Plaintiff has stated a claim under § 1983 for deliberate indifference against City, County, and Sheriff Royal and Administrator Christmas, in their official capacities. Plaintiff has also stated a claim against the Jailers, in their individual capacities, for deliberate indifference and excessive force. The Court cannot conclude that Jailers are protected from these claims by qualified immunity. Plaintiff's state-law claims against City and County are barred by sovereign immunity and are therefore **DISMISSED**. However, Plaintiff has made a valid state law claim against Sheriff Royal, in his official capacity. Finally, Plaintiff's excessive force claim against Sheriff Royal, in his official capacity, is also **DISMISSED**.

Therefore, upon due consideration, Defendants' motion to dismiss (docs. 42-1, 47-1) is hereby **GRANTED IN PART AND DENIED IN PART**; Count One and Nine are **DISMISSED** against City and County only; and Count Seven is **DISMISSED**, with respect to Sheriff Royal, in his official capacity. All other counts remain.

**ORDER ENTERED** at Augusta, Georgia this 29th day of September, 2017.

J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA