IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | | |
|---|---|---|
| SUSI EMERITA PELKA, as the Surviving Spouse & Personal Representative of the Estate of JEFFERY DAVID PELKA, Deceased, <br><br> Plaintiff, <br><br> v. <br><br> WARE COUNTY, GEORGIA; RANDY ROYAL, Individually and in his Official Capacity as Sheriff of Ware County, Georgia; DANNY CHRISTMAS, Individually and in his Official Capacity as Administrator of the Ware County Jail; CITY OF WAYCROSS, GEORGIA; JEFFREY NICHOLS, BELENDA MCELROY, DWAYNE HOWELL, DONNY SPRADLEY, JAMES SOWELL, JAMES ALDRIDGE, NATHANIEL ROBERTS, MICHAL DEAN, JOSHUA RYLEE, GARY SIMMONS, HUBERT RYALS, and JAMES LEE, in their Individual Capacities; PETER WROBEL, M.D., Individually and in his Official Capacity as Medical Director of the Ware County Jail; PETER WROBEL, M.D., P.C.; SOUTHEAST GEORGIA PRIMARY CARE, P.C.; SOUTHERN CORRECTIONAL MEDICINE, LLC; and DONNA BENNETT, MICHELLE CHANCEY, JOHNNY LEE JONES, JR., SUSAN MARTIN, SHARON RAY, LYNN STREAT, and KRISTY WHITE, in their Individual Capacities, <br><br> Defendants. | * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * | <br><br><br><br><br><br><br><br><br> CV 516-108 |

**O R D E R**

Before the Court is Defendant the City of Waycross's (the "City") motion for reconsideration.[1] (Doc. 92.) For the following reasons, the City's motion is **GRANTED**.

## I. BACKGROUND

This case arises out of the death of Jeffery David Pelka ("Decedent"). On Friday December 12, 2014, the Municipal Court of Waycross, Georgia, revoked Decedent's probation. (Compl. Doc. 1, ¶ 40.) Instead of bringing Decedent to a jail operated by the City, Decedent was brought to the Ware County Jail ("WCJ"). (Id. ¶ 41.) Although it does not operate the WCJ, the City houses its prisoners there pursuant to an agreement with Ware County. (Id. ¶¶ 8, 118.)

Before his incarceration, Decedent had been taking opiates that were allegedly prescribed by his physician. (Id. ¶ 51.) Due to a WCJ policy that forbade inmates from taking medications not prescribed by a WCJ doctor, Decedent was not allowed to take

---

[1] While the City frames its motion as a motion for interlocutory appeal, the City's request can more easily be resolved by the Court. Accordingly, its motion is construed as a motion for reconsideration.

2

his medication and began suffering from prescription drug withdrawal. (Id. ¶¶ 49, 53.) Unfortunately, WCJ's physician, Dr. Peter J. Wrobel, was only scheduled to visit on Tuesdays and Thursdays. (Id. ¶ 50.) Because Decedent was arrested on Friday, he would go the entire weekend without his medication. (Id.) Decedent's withdrawal symptoms progressed throughout the weekend until his death on Monday, December 15, 2014. (Id. ¶¶ 99-111.)

Plaintiff Susi Emerita Pelka, Decedent's surviving spouse and Personal Representative of his estate, filed the instant action on December 11, 2016. In addition to Ware County, the Ware County Sheriff, and WCJ personnel, Plaintiff named the City of Waycross as a Defendant to this action. Plaintiff contends that by contracting to house its prisoners at WCJ, the policies of WCJ were imputed to the City.

The City moved to dismiss arguing that liability could not be imputed to it by virtue of the contract with Ware County. Instead, Plaintiff needed to allege facts that showed the City acted with deliberate indifference when it contracted with the County and housed its prisoners in the County facility operating under County policies. In a September 29, 2017 Order, the Court rejected these arguments relying on Ancata v. Prison Health Servs., Inc., 769 F.2d 700 (11th Cir. 1985), to deny the City's motion to dismiss Plaintiff's Section 1983 claim. (Doc. 91 at

3

14-15.) Thereafter, the City moved for interlocutory appeal. (Doc. 92.) After reviewing the City's motion and relevant precedent, the Court finds that its previous Order denying the City's motion to dismiss was clear error.

## II. DISCUSSION

### A. Legal Standard

Reconsideration of an earlier order is an extraordinary remedy, which should be permitted sparingly. Region 8 Forest Servs. Timber Purchasers Council v. Alcock, 993 F.2d 800, 805-06 (11th Cir. 1993). To succeed, the movant must show: (1) an intervening change in controlling law, (2) the availability of new evidence, or (3) the need to correct clear error or prevent manifest injustice. Estate of Pidcock By and Through Pidcock v. Sunnyland Am., Inc., 726 F. Supp. 1322, 1333 (S.D. Ga. 1989). In this case, the City's motion for interlocutory appeal, construed as a motion for reconsideration, asks the Court to correct a clear error of law.

In considering a motion for reconsideration, a court must balance the need for finality and judicial economy against the need to render just decisions. Consequently, a motion for reconsideration should not be used to relitigate issues which have already been found lacking. Gov't Personnel Servs., Inc.

4

v. Gov't Personnel Mut. Life Ins. Co., 759 F. Supp. 792, 793 (M.D. Fla. 1991), aff'd, 986 F.2d 506 (11th Cir. 1993).

**B. The City's Section 1983 Liability**

A plaintiff bringing a claim under 42 U.S.C. § 1983 against a municipality must first identify a municipal policy or custom that caused a deprivation of federal rights. Davis v. DeKalb Cnty. Sch. Dist., 233 F.3d 1367, 1375 (11th Cir. 2000) (citing Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397 (1997)). Next, the alleged conduct must be properly attributable to the local government unit, meaning that a municipality may not be held liable under Section 1983 on a theory of *respondeat superior*. Id. (citing Monell v. Dept. of Soc. Servs., 436 U.S. 658 (1978)). When a plaintiff claims a municipality indirectly contributed to the injury, "rigorous standards of culpability and causation must be applied to ensure that the municipality is not held solely liable for the actions of others." Brown, 520 U.S. at 405. Thus, the plaintiff must show that the municipality's actions demonstrated a deliberate indifference to the known or obvious consequences of such action. Davis, 233 F.3d at 1375 (citing Brown, 520 U.S. at 407).

The City argues that the Court's September 29 Order concluding that the City's liability under Section 1983 can be

5

imputed from its contract with Ware County is a clear error. Specifically, the City contends that the Court's reliance on Ancata is misplaced and that the City cannot be liable for the County's policies. As such, a review of Ancata and related precedents is appropriate.

In Ancata v. Prison Health Servs., Inc., 769 F.2d 700 (11th Cir. 1985), the Eleventh Circuit held that a municipal government could be held liable for the alleged unconstitutional policies of the private medical provider it contracted with to provide health services to its prison. Id. at 705. The court reasoned that since governments have a "non-delegable" duty to provide medical care to incarcerated individuals, they can be held liable for violations of that duty, even where the medical care was provided by a private third party entity. Id. Ancata is, however, distinguishable from this case in that the municipality contracted with a *private* entity for medical services, whereas the City here was contracting with another governmental unit with its own independent duty to provide incarcerated individuals with medical care.

This distinction was recognized in Deaton v. Montogmery [Montgomery] Cnty., 989 F.2d 885 (6th Cir. 1993), where the Sixth Circuit held that a county was not automatically liable for the strip search policies of a city by virtue of a contract to house county prisoners in the city jail. Id. at 888. The court

6

explained that unlike Ancata, the city had independent authority to house prisoners and was required to follow the same laws as the county. Because of that distinction, the court held that the county did not adopt the city's policy by default absent a showing of deliberate indifference. Id. at 889.

The Deaton court went on to find the plaintiff failed to allege facts that showed any deliberate indifference on the part of the county or its agents. Id. The court noted that neither the county nor its sheriff had "an affirmative duty to discover whether the city is following state law." Id. And, moreover, the plaintiff presented no facts indicating the sheriff knew or should have known that the strip search policy was in violation of state law. Id. at 889-90. Finally, the court pointed out that the act of filing a suit challenging a policy could be sufficient to put the county on notice in the future. Id. at 890.

Some courts have been critical of the reasoning in Deaton. In Ford v. City of Boston, 154 F. Supp. 2d 131 (D. Mass. 2001), the court found that the city was liable for the county's strip search policy. Id. at 149-50. The court clarified that it was not subjecting the city to *respondeat superior* liability. Instead, "the question is City liability for promulgation and implementation of an express County policy, not City liability for the negligent acts of County employees acting as agents of

7

the City." Id. at 148 n.38. The court also rejected the distinction Deaton made between private and governmental entities. By contracting with another governmental entity, the city had an affirmative obligation to ensure that the county's policies complied with constitutional standards. Nevertheless, the court still applied the deliberate indifference standard to determine if the city met its obligation. Id. at 149-50 (finding plaintiffs established the city's deliberate indifference by showing it failed to monitor the county facility's policies after a change in the First Circuit's relevant strip search law and sending "almost ten thousand" detainees to the county facility).

Similarly, in Trujilo v. City and Cnty. of Denver, 2016 WL 5791208 (D. Colo. Sept. 7, 2016), the court applied the reasoning from Ford to find the city could be liable for the health care policies of the public entity in charge of the prison's health services. Id. at *13-14. The court discussed Deaton, but, importantly, focused on the allegations necessary to show deliberate indifference on the part of the city. Id. at *14. Unlike the insufficient allegations in Deaton, the Trujilo court found the plaintiff in its case alleged facts showing the city was deliberately indifferent, namely that the city had a significant history of failing to train its personnel properly

to administer health care to inmates. Id. There was further evidence adduced by the plaintiff to show the city was aware of a previous inmate's death, was involved in litigation and an eventual settlement related to that death, and dealt with public outcry stemming from that incident. These facts were sufficient to put the city on notice and "allege[] plausibly that the [c]ity was deliberately indifferent." Id. at *15.

Finally, Warren v. Dist. of Columbia, 353 F.3d 36 (D.C. Cir. 2004), clarifies the contours of the deliberate indifference standard. In that case, the plaintiff sued the District of Columbia and the private prison it contracted with to house plaintiff and other inmates for constitutional violations under Section 1983. Id. at 38. Discussing the deliberate indifference theory of municipal liability, the court explained that the required culpability involves more than just negligence. Id. at 39. "It does *not* require the city to take reasonable care to discover and prevent constitutional violations." Id. (emphasis in original). The Warren court did, however, state that either actual or constructive knowledge of its agents' constitutional violations could be enough to impose liability on a municipality. Accordingly, even under the most lenient standard, a plaintiff must still show that the

9

municipality had sufficient notice of the policy to find it demonstrated deliberate indifference.

In the instant case, Plaintiff failed to allege facts that show the City had notice of WCJ's policy. Plaintiff does contend that the policies were a matter of public record, available through the Georgia Open Records Act. (Doc. 101-1, ¶¶ 2-4.) Access to the public record, however, is insufficient to put the City on notice, particularly under the rigorous standards of culpability required to hold a municipality liable for deliberate indifference. See Brown, 520 U.S. at 405; see also Franklin v. Curry, 738 F.3d 1246, 1249 (11th Cir. 2013) ("Deliberate indifference requires more than constructive knowledge."); but see Warren, 353 F.2d at 39 (actual or constructive notice of constitutional violations is enough to impose liability on a municipality). Additionally, if making a policy public was enough to satisfy notice, any state with a public record would put every municipality on notice of every promulgated government policy. Finding knowledge based on public records would vitiate the deliberate indifference standard. Plaintiff must allege that the City knew about WCJ's policies or that such knowledge can be inferred from its

obviousness.[2] See Goebert v. Lee Cnty., 510 F.3d 1312, 1326 (11th Cir. 2007).

Plaintiff, however, failed to allege facts that demonstrate that the City had notice of WCJ's policy or that it was deliberately indifferent to the alleged unconstitutional policies. Plaintiff alleges no prior similar incidents at WCJ or previous lawsuits filed that could provide notice. See Deaton, 989 F.2d at 890; Trijilo, 2016 WL 5491208, at *14. For these reasons, Plaintiff has failed to allege a basis for the City's liability under 42 U.S.C. § 1983. Accordingly, refusing to grant the City's motion to dismiss was an error and its motion for reconsideration (doc. 92) is **GRANTED**.

## III. CONCLUSION

Therefore, upon due consideration, the Court hereby **GRANTS** the City's motion for reconsideration (doc. 92) and **DISMISSES** Plaintiff's claims against the City.

**ORDER ENTERED** at Augusta, Georgia, this 11th day of September, 2018.

_____
J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

[2] Because Plaintiff's proposed amended complaint relies on the same theory of constructive knowledge, her Motion for Leave to Amend Her Complaint (doc. 101) is **DENIED**.

11